562 So.2d 1013 (1990)
Edna C. LAVERGNE, et al., Plaintiffs-Appellees,
v.
LAWTELL GRAVITY DRAINAGE DISTRICT NO. 11, et al., Defendants-Appellants.
No. 89-74.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1990.
*1014 I. Jackson Burson, Jr., Dist. Atty., Eunice, for defendant/appellant.
Willis, Ledet & Dejean, Stephen J. Ledet, Opelousas, for plaintiff/appellant.
*1015 Before GUIDRY, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
This is an appeal from the trial judge's award for damages suffered by the plaintiff landowners, Edna Lavergne and various members of her family (herein, collectively, landowners), caused by activities of Lawtell Gravity Drainage District No. 11. The drainage district appeals alleging numerous assignments of error which we will discuss under the appropriate headings. We affirm in part and reverse in part.
The landowners sued for damages after the drainage district went on their property and cleaned out a drainage canal. The clean out occurred between October 16 and 19, 1985. The canal runs east and west along the southern boundary of the landowners' property. The trial court found that the land where the canal was located is also subject to a Missouri-Pacific railroad right-of-way.
The landowners sought damages for trespass, and damages for the loss of trees, crops and a fence, and where spoil was placed on the property. In addition, they sought damages to compensate for the reestablishment of their boundary line. The trial court awarded damages in the total amount of $16,529.67, and costs. It is from this judgment that the drainage district appeals.

LEGAL SERVITUDE
In its first assignment of error the drainage district complains that it had a statutory right of control over this drainage channel, and that therefore it did not commit a trespass, and that the trial court erred in finding that it did.
La.R.S. 38:113 provides for the control of drainage canals in levee and drainage districts.
§ 113. Control of drainage channels in levee and drainage districts
The various levee and drainage districts shall have control over all public drainage channels within the limits of their districts and for a space of one hundred feet on each side of the channel, selected by the district and recommended and approved by the Department of Public Works, whether the drainage channels have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels, and may adopt rules and regulations for preserving the efficiency of the drainage channels.
According to the cases, the statute grants to a drainage district a legal servitude over drainage channels within its district, but certain prerequisites are essential before a drainage district can take advantage of the servitude. Whipp v. Bayou Plaquemine Brule Drainage Bd., 476 So.2d 1042 (La.App. 3d Cir.1985); Terrebonne Parish Police Jury v. Matherne, 394 So.2d 1302, 1304 (La.App. 1st Cir.1981), modified, 405 So.2d 314 (La.1981), cert. denied, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Our Supreme Court in Terrebonne Parish Police Jury v. Matherne, supra, explained that La.R.S. 38:113 never authorizes a public body to take or damage private property without just compensation or without due process of law. The "advantage" that a drainage district enjoys when it can exercise the legal servitude established by this article, is that it can enter the property for drainage purposes without being guilty of a trespass, and without exposing itself to damages for a trespass.
As explained in Whipp, the following prerequisites must be met:
First, the drainage channel must have been either previously improved by the drainage district or adopted without prior improvement as a necessary part of or extension to improved drainage channels. Second, the drainage channel must be a public channel. Third, the channel must be selected by the drainage district and recommended and approved by the Office of Public Works.
The trial judge in the present case found a trespass by the drainage district, and awarded damages of $5,000 for the trespass. We agree with the trial judge that *1016 there was a trespass. Our analysis of the vigorously contested facts supports the finding that the first and second of the Whipp prerequisites were met, but the third was not, leading to the conclusion that the drainage district could not rely on the servitude for the avoidance of liability for trespass. However, we find it unnecessary to dwell for any time on a discussion of the evidence regarding the prerequisites, because we finddisagreeing with the trial judgethat the landowners failed to prove damages for the trespass with the certainty required by law. We will reverse this award for reasons which we will explain more fully in this opinion under the subject of damages.

DAMAGES
Six of the drainage district's assignments of error address damages. The trial judge's reasons for judgment recited the following itemization:

Removal of dirt and restoration $4620.00
Erosion spots 4466.70
Trees (Fruit, nut, etc.) 500.00
Fencing 942.97
Re-establish boundary line 1000.00
Loss of crops None
Trespass (characterized in petition
 as "improper taking of property") 5000.00

The drainage district complains that the overall damage award was excessive, and that it was error for the trial court to award damages specifically for replacement of the fencing, removal of dirt and restoration, erosion spots, loss of trees, and a survey to reestablish the boundary line of the Lavergne property. We have reviewed the record carefully and, except for the trespass, we find no clear error in the trial judge's factual determination that there was damage in these particulars. We also find no abuse of discretion in the particular awards.
Damages resulting from a trespass must be proved. M & A Farms, Ltd. v. Town of Ville Platte, 422 So.2d 708 (La.App. 3d Cir.1982). In Dickie's Sportsman's Centers v. Dept. of Transp., 477 So.2d 744 (La.App. 1st Cir.1985), writ denied 478 So.2d 530 (La.1985), the court explained further:
In the assessment of damages arising out of trespass, the trial court has much discretion. M & A Farms, Ltd. v. Town of Ville Platte, supra. The damage, however, must be certain, and the discretion exercised only to the extent of the damage and ascertained from all the facts and circumstances. M & A Farms, Ltd. v. Town of Ville Platte, supra; Bentley v. Industrial Fire Protection Co., 338 So.2d 1177 (La. App. 2nd Cir.1976).
Specific damages for loss of trees, erosion spots, loss of fence and reestablishment of the boundary line were awarded in the present case. The drainage district, had it been a private rather than a public body, would have been liable for these proven damages as damages resulting from a trespass. Wendorf v. Corley, 394 So.2d 1252 (La.App. 3d Cir.1980). As a public body, however, its obligation rests on its liability under La. Const. art. I, § 4 resulting from a taking of property for public purposes. For these specific damage items awarded by the trial judge, the drainage district is not subject to double liability merely because its acts constituted a trespass. Of course, as additional damages for the trespass it could have been liable for any proved mental anguish. Dugas v. St. Martin Parish Police Jury, 351 So.2d 271 (La. App. 3d Cir.1977), writ den., 353 So.2d 1046 (La.1978). However, no evidence was presented to support an award of mental anguish or humiliation. The landowners were not even questioned regarding any such damage. Therefore, because the record does not establish any factual basis for an award for "trespass", we reverse the trial court's $5,000 award.

CREDIT FOR SETTLEMENTS WITH OTHER DEFENDANTS
The drainage district argues that the trial court should have given it credit for settlements made between the landowners and other defendants in the suit. As to one of these defendants, we agree.
In case of settlement between the obligee and one of the solidary obligors, the liability of the other solidary obligors is *1017 reduced in the amount of the portion of the released obligor. La.C.C. art. 1803, Comment (b). In order for the drainage district to get the benefit of a reduction according to this article, it had to establish that it was a solidary obligor with the released defendants, who were MCI Telecommunication Corporation (MCI) and Leo Guidry. (Tommy Richter was also named as a defendant, but his name did not come up in the testimony.) MCI and Guidry were once in the case as defendants, but they obtained releases by paying damages to the landowners. The drainage district wanted credit for these settlements.
MCI (and four other telephone company defendants) were added as defendants in the case by amending and supplemental petition. MCI obtained removal to federal court. At some point, we assume after removal, the landowners apparently settled with MCI. There was no evidence of this introduced at trial except brief testimony from a landowner stating that there was a settlement with MCI for $15,000.
The obligations sued on by the landowners against MCI and the drainage district were two separate and distinct obligations, and thus these defendants were not solidary obligors. The landowners sued the drainage district for damages resulting from work done to widen and deepen the canal, work that was allegedly done in October 1985. They sued MCI for damages resulting from installation of an underground fiber optic cable done allegedly in July 1986. Although the damages may be similar in nature, the trespasses and obligations arose from separate facts and circumstances and occurred almost a year apart. This difference is supported by the circumstance that MCI was able to remove its case to federal court leaving the drainage district in state court. Since the drainage district and MCI owed separate obligations and therefore were not solidary obligors, the drainage district is not entitled to a reduction under La.C.C. art. 1803.
The drainage district also maintains that a credit should be given for a $2,600 settlement made between the landowners and Leo Guidry and his insurer some eight months before trial. Guidry was a dragline contractor hired by the drainage board to perform the work which caused the damages. The drainage district filed a cross-claim against him seeking contribution. In its brief on appeal, the drainage district argues that the award against it should be reduced on account of Guidry's settlement and release. There is merit to this argument.
In order to claim contribution from a released obligor, the remaining defendant is required to establish the obligation of the released defendant. Raley v. Carter, 412 So.2d 1045 (La.1982). A pre-trial settlement shifts the burden of proving liability on the part of the parties released from the plaintiff to the remaining defendants. Id. On this record we find that the drainage district proved the liability of Guidry to the landowners.
To constitute a trespass, there must be an unlawful physical invasion of property or possession of another. M & A Farms, Ltd. v. Town of Ville Platte, supra. In this case, both the drainage district and Guidry were trespassers, Guidry for going on the land unlawfully, and the drainage district for sending him onto the land unlawfully. In his testimony Guidry admitted that he operated the dragline that did the excavation. Thus, as to the landowners, both these defendants were trespassers.
Although we have found no proof of general damages (mental anguish) caused by the trespass, we have upheld the awards for special damages. Guidry was liable to the landowners for these special damages as a trespasser. The liability of cotrespassers for the damage caused by their trespass is a solidary obligation. Huguet v. Louisiana Power & Light Co., 196 La. 771, 200 So. 141 (1941).
The question of the amount of the credit, or reduction, by which the drainage district benefits by the settlement with Guidry, involves the application of La.C.C. arts. 1803 and 1804. These articles deal with the liability of solidary obligors among themselves and the effect of a compromise or settlement between the obligee *1018 and one of the solidary obligors. The articles provide that, if the obligation arises from an offense or quasi-offense, the liability of the solidary obligors is reduced in the amount of the virile portion of the settling obligor. Trespass is a tort, or offense. Boudreaux v. Terrebonne Parish Police Jury, 422 So.2d 1209 (La.App. 1st Cir.1982). Accordingly, the drainage district benefits from the settlement with Guidry in the amount of the portion of Guidry, determined by the rules of comparative negligence. Antley v. Yamaha Motor Corp., U.S.A., 539 So.2d 696 (La.App. 3d Cir.1989).
The trial judge in this case made no mention of the cross-claim, which is the equivalent of a denial of that claim. Reed v. Seacoast Products, Inc., 458 So.2d 971 (La.App. 3d Cir.1984). We reverse that ruling, and grant the drainage district's demand for contribution. There is no determination of comparative fault in the record, but enough evidence for us to make that determination. We now do so.
The evidence is that Guidry was operating his dragline under contract with the drainage district. He was paid by the hour and his work was done strictly in accordance with the direct instructions of Jimmy Miller, the president of the drainage board, who was on the site directing his every move. Considering that the drainage board was in the far better position to know whether it had authority to be on the property, and to know the extent of the damages that would probably result from its planned work, and considering also, that the drainage district was in complete control of the operation, we regard the drainage district's virile portion to be 90%, and Guidry's 10%. The drainage district's liability is reduced by 10%, the portion of Guidry.

INVALID JUDGMENT
The trial judge in his reasons for judgment referred to the defendant as the Police Jury instead of Lawtell Gravity Drainage District No. 11. The drainage district argues that this mistake means that the reasons for judgment do not support the judgment, and that it is therefore invalid. This assignment has no merit. The trial judge's reference to the police jury was a slip of the tongue which neither misled nor damaged anyone. Although the police jury was at one time a defendant, Lawtell Gravity Drainage District No. 11 was the only defendant left in the case at the time of trial, and the only party against whom a judgment could be rendered.

COURT COSTS
The drainage district argues in its last assignment of error that the trial court erred in ordering it to pay the costs of court, because the settlement between the landowners and Guidry and Richter stated "plaintiff to bear all costs of court". This assignment is without merit. This statement involved only the costs of court between the parties to the settlement. The landowners were not settling and offering to pay the court costs of the subsequent trial.
For the foregoing reasons, we reverse and set aside the trial court's award in favor of plaintiffs and against the defendant, Lawtell Gravity Drainage District No. 11, of $5,000 for trespass damages. We reduce the remaining award by one-tenth. In all other respects, we affirm the judgment. The award, after reduction, is $10,376.70. Costs of this appeal are to be assessed equally between the drainage district and the landowners.
AFFIRMED IN PART AND REVERSED IN PART.